IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────────────────────

BARRY DONOHOO,

                           Plaintiff,                                  OPINION and ORDER

v.

                                                                   14-cv-309-wmc

DOUG HANSON *et al.*,

                           Defendants.
───────────────────────────────────────────────────────────────

      This lawsuit arises out of a relatively common dispute in Wisconsin between county officials and a landowner seeking a land use permit to construct an addition to his lakefront home. The difference here being that the landowner, who was dissatisfied with the process afforded him in state court, now hopes to make a federal case out of it.

      The Constitution does, of course, provide protection to property owners. However, any constitutional challenge to a local land use decision must be considered in light of the principle that "zoning laws and their provisions, long considered essential to effective urban planning, are peculiarly within the province of state and local legislative authorities." *Green Valley Investments v. Winnebago Cnty., Wis.*, 794 F.3d 864 (7th Cir. July 27, 2015) (*quoting Warth v. Seldin*, 422 U.S. 490, 508 n.18 (1975)). For this reason, property owners dissatisfied with a local land use decision generally must appeal to local land use agencies or state court for relief. "[F]ederal courts, as we have explained time and again, are not zoning boards of appeal." *Miller v. City of Monona*, 784 F.3d 1113, 1119 (7th Cir. 2015) (*citing CEnergy–Glenmore Wind Farm # 1, LLC v. Town of Glenmore*, 769 F.3d 485, 487 (7th Cir. 2014) (collecting cases)).

That being said, there are three constitutional protections frequently invoked by federal plaintiffs challenging land use decisions: the Fifth Amendment Takings Clause; the Fourteenth Amendment Equal Protection Clause; and the Fourteenth Amendment Due Process Clause. The Takings Clause, which applies to states via the Due Process Clause of the Fourteenth Amendment, says that private property may not be "taken for public use, without just compensation." U.S. Const. amend. V. The Due Process Clause, in turn, says that states may not "deprive any person of . . . property, without due process of law." U.S. Const. amend. XIV. The Equal Protection clause prohibits states from denying "to any person within its jurisdiction the equal protection of the laws." *Id.* *Pro se* plaintiff Barry Donohoo appears to invoke all three of these constitutional protections in his complaint.

Local officials in Douglas County, Wisconsin, denied Donohoo's permit request on the grounds that his proposal exceeded County zoning limitations on construction of shoreland property. Believing that the County's shoreland zoning ordinances conflicted with a recently enacted state law, Donohoo then appealed the denial of his permit to the County Board of Adjustment, and when the Board upheld the denial, he filed a petition for writ of certiorari in state circuit court. While his certiorari case was pending, however, the County amended its shoreland zoning ordinances and issued a land use permit to Donohoo. Nonetheless, he filed this federal lawsuit, contending that the initial denial of his permit request, as well as subsequent related actions taken by County officials, violated his constitutional rights.

Now before the court is defendants' motion for summary judgment (dkt. #27), as well as Donohoo's motion for leave to amend his complaint (dkt. #61). After reviewing the parties' legal arguments, proposed findings of fact and evidence in the record, defendants'

2

motion will be granted as a matter of law under Fed. R. Civ. P. 56(a), the undisputed facts and governing law confirming that Donohoo cannot prove any federal constitutional claim against the defendants.[1]

## UNDISPUTED FACTS[2]

### I. The Parties

Plaintiff Barry R. Donohoo lives on Lake of the Woods in the Town of Solon Springs, an unincorporated area in Douglas County, Wisconsin. Defendants are all county employees. Doug Hanson is the appointed Chair of the Douglas County Board of Adjustment; Roger Wilson, Dale Johnson and Larry Luostari are appointed members of the Board of Adjustment; Steven Rannenberg is the Douglas County Planning and Zoning Administrator; Carolyn Pierce is corporation counsel; and Susan T. Sandvick is the county clerk.

### II. Donohoo Seeks a Building Permit to Expand His Home.

On May 25, 2015, Donohoo filed a land use permit application and mitigation plan with the Douglas County Planning and Zoning office to construct a small addition to his

---

[1] Donohoo's request for leave to amend his complaint to add additional factual allegations and legal assertions will be denied as futile. (Dkt. #61 at 1 (plaintiff explaining that his proposed amended complaint "maintains the counts and allegations against the same defendants from the original complaint," but merely adds additional facts learned during discovery to further support his claims).) At this stage, the additional allegations in the proposed pleading will not help Donohoo. In order to survive summary judgment, Donohoo was required to come forward with evidence sufficient to prove each element of his claims -- the so-called "put up or shut up" stage in a lawsuit. *Olendzki v. Rossi*, 765 F.3d 742, 749 (7th Cir. 2014). Donohoo failed to do so.

[2] The court finds the following facts material and undisputed unless otherwise noted. The facts are drawn from the defendants' proposed findings of fact, as well as Donohoo's evidentiary submissions and responses to defendants' proposed findings.

home.[3] Donohoo had intentionally limited his construction proposal in order to comply with the Douglas County shoreland zoning ordinances, which placed numerous restrictions on building and development located in the unincorporated shoreland areas of the County.

Shortly after filing his permit application, however, Donohoo learned that a state law, 2011 Wisconsin Act 170 ("Act 170"), had been passed on April 17, 2012, restricting local authorities from enacting shoreland zoning ordinances for "nonconforming structures" that were more restrictive than those passed by the Wisconsin Department of Natural Resources ("WDNR"). Believing that the new state law applied to his home and trumped the County's shoreland zoning ordinances, Donohoo notified the County Zoning and Planning office that he was withdrawing his permit application and mitigation plan. On May 30, 2012, he submitted a revised permit application in which he proposed a significantly greater addition to his home. In particular, he proposed to add a second story to the entire principal structure on his property, effectively increasing its area by 100%.

### III. Rannenberg Denies Donohoo's Permit Request and the Board of Adjustment Rejects His Appeal.

As the County Planning and Zoning administrator, Rannenberg was responsible for reviewing and either approving or denying Donohoo's permit application. While Rannenberg was unsure how to respond given an apparent conflict between county ordinances and state law, the parties agree that at the time Donohoo filed his revised permit application, his proposal violated the existing County shoreland zoning ordinances. The ordinances limited expansion of a lakeshore home such as Donohoo's to 50% by area, as well as imposed specific mitigation requirements, unless preempted by then recently enacted

---

[3] Property within the Town of Solon Springs is subject to Douglas County's zoning ordinances.

4

Act 170, although even before its enactment, the most recent WDNR shoreland zoning regulations were less restrictive than those imposed by the County. *See* Wis. Admin. Code § NR 115. In short, at the time it was initially before him, Rannenberg was uncertain whether Donohoo's revised application violated any or all of the County's shoreland zoning ordinances, WDNR regulations or Act 170.

Accordingly, Rannenberg reached out to the WDNR Shoreland Policy Coordinator, Heidi Kennedy, for guidance on how the WDNR interpreted the changes created by Act 170. *See* Rannenberg Aff., dkt. #36, Exhs. E, G. Kennedy responded that WDNR legal counsel had opined that, although Act 170 no longer permitted Douglas County to have more restrictive shoreland zoning ordinances than those contained in WDNR regulations, Douglas County's limitation on area expansion was not prohibited by Act 170 and the County could maintain its requirement for a mitigation plan. Rannenberg subsequently denied Donohoo's land use permit application on the grounds that it did not comply with the County's shoreland zoning ordinance. *See* Rannenberg Aff., dkt. #36, Exh. F (June 7, 2012 letter to Donohoo explaining reasons for permit denial).

On June 22, 2012, Donohoo appealed the denial to the Douglas County Board of Adjustment. The Board addressed Donohoo's appeal at a hearing on July 25, 2012. At the hearing, Rannenberg testified that he rejected Donohoo's permit because it was contrary to County shoreland zoning ordinances and that, based on Rannenberg's communications with WDNR, he did not believe that Act 170 trumped those ordinances. Donohoo then argued that Act 170 trumped the County's shoreland zoning ordinance.[4] After hearing from

---

[4] The parties dispute the extent to which Donohoo was allowed to present evidence and argument at the hearing. Defendants say that Donohoo had the opportunity to present his

5

Donohoo, the Board members asked questions of both Rannenberg and Donohoo. Ultimately, the Board upheld the denial of Donohoo's permit application.

**IV.    Donohoo Files a Petition for a Writ of Certiorari in State Court, Douglas County Amends Its Zoning Ordinances, and Donohoo Receives a Permit.**

On August 24, 2012, Donohoo brought a certiorari action in Douglas County Circuit Court challenging the Board's decision to uphold the denial of his permit application. *Donohoo v. Douglas County Board of Adjustment*, 2012CV306 (Dougl. Cnty. Cir. Ct.). As the Douglas County clerk, Sandvick was responsible for submitting the record of the Board's decision to the circuit court for review. For reasons that are unclear from the record, Sandvick did not submit the record of the Board's decision to the circuit court until March 7, 2013. *See* Sandvick Dep. at 14-15, Dkt. #43. That record consisted of the minutes, exhibits and agenda of the July 25 meeting. Additionally, although the Board's July 25 hearing had been recorded, Sandvick did not submit the audio recording to the circuit court on the ground that it had been compromised by a technical failure.[5]

On December 20, 2012, before the circuit court had addressed the merits of Donohoo's certiorari petition, the County amended its shoreland zoning ordinances to

---

arguments as to why Act 170 required the Board to grant his permit, while Donohoo says that the Board refused to allow him to present some evidentiary exhibits and refused to allow his father, who is an attorney, to present his interpretation of the relevant law. These disputes are immaterial for the purposes of summary judgment because, even under Donohoo's version of events, he has not shown that his constitutional rights were violated even if his right to speak was somewhat truncated. *See* discussion on page 16-18, *infra*.

[5] The parties dispute the extent to which the audio recording was actually compromised or whether the County made sufficient effort to repair it. This dispute is also ultimately irrelevant for purposes of summary judgment. As discussed on page 17, *infra*, any complaint plaintiff had regarding the adequacy of defendants' production or their responsiveness to the certiorari action could and should have been raised in that action. Defendants' alleged failure to properly respond to an order from the state court does not provide the basis for a federal constitutional claim.

conform with Act 170 and WDNR's regulations. The following day, on December 21, Rannenberg notified Donohoo that, under the newly enacted ordinances, Rannenberg could issue Donohoo's requested land use permit, subject to approval of a mitigation plan by the County Land and Water Conservation Department and payment of a $250 fee in conjunction with the mitigation plan. Although it is not entirely clear from the record, disagreements about mitigation requirements seem to have further stalled the issuance of Donohoo's land use permit for several more months. The permit was, however, finally issued on May 31, 2013.[6]

Neither side explains what happened with Donohoo's certiorari action between the time it was filed and the time Donohoo received his permit, but Wisconsin's online court records indicate that Donohoo's certiorari action was ultimately dismissed on January 23, 2014. Perhaps because Donohoo had received a permit from the County before the state circuit court was ready to issue a decision, it also appears that the merits of Donohoo's petition were never decided. The court did, however, issue a decision denying Donohoo's request for fees under Wis. Stat. § 59.694(14), concluding that Donohoo could only obtain fees by proving that the Board acted in "bad faith." Dkt. #56 (circuit court decision on fees). The court further found that there was no evidence that the Board acted with "gross negligence, in bad faith or with malice" in denying Donohoo's administrative appeal. *Id.*

---

[6] Even after the permit was issued, Donohoo apparently continued to object to conditions imposed on his project. At some point in September or October 2013, Rannenberg gave Donohoo a copy of the permit without any conditions included, although Rannenberg insists that he simply made a copy of the original permit with the conditions covered in order to placate Donohoo, even though both he and Donohoo understood that the original permit imposed various mitigation requirements. *See* Rannenberg Aff., dkt. #36, ¶ 53. Donohoo maintains that Rannenberg's action was intended to and did confuse him, causing him to believe that all of the conditions had been removed from his permit. *See* Donohoo Aff., dkt. #59, at ¶ 10.

Instead, the court held that although the record showed that the Board may have "misinterpreted the newly enacted state law when it relied upon the advice of its Zoning Administrator and the DNR," the Board did not act in bad faith. *Id.*

Donohoo did not appeal the circuit court's decision, nor did he file any further lawsuits in state court challenging the land use permit he eventually received.

### V. Permits Issued to Other Landowners.

After the December 20, 2012, amendments to the Douglas County Zoning Code, two other landowners with property located on Lake of the Woods sought land use permits proposing vertical expansion of structures, similar to the project proposed by Donohoo. In both instances, mitigation plans were required of and implemented by the property owners. *See* Rannenberg Aff., dkt. #36, at ¶¶54-55.

### OPINION

Donohoo alleges in his complaint that his constitutional rights to due process, equal protection and the use and enjoyment of his property were violated when: (a) Rannenberg denied his land use permit in June of 2012; (b) the Board upheld denial of the permit at the hearing on July 25, 2012; (c) the County failed to promptly provide the full record to the circuit court in response to his certiorari action; and (d) the County conditioned his eventual permit on mitigation requirements that were contrary to 2011 Wisconsin Act 170 and more onerous than those imposed on other landowners. Defendants have moved for summary judgment on all of Donohoo's claims, contending that none of the actions about which he complains amount to denial of a constitutional right. Because Donohoo has failed

8

to make a viable legal argument or point the court to legitimate material factual disputes in this record, defendants' motion will be granted in its entirety.

I.  **Preliminary Matters**

At the outset, it is worth noting that Donohoo's brief in opposition to defendants' motion (dkt. #54), fails to provide any meaningful response to the legal arguments defendants raised in their brief in support of summary judgment. To the contrary, his entire brief is less than four pages long and contains no discussion of the law applicable to his claims. Further, although he contends that there are factual disputes, he makes no attempt to explain how those purported disputes are *relevant* to any of the constitutional claims he has raised. Indeed, Donohoo fails to address the elements of his constitutional claims at all.

Generally, the failure to provide any meaningfully opposition to an argument operates as waiver. *Wojitas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2014); *Cincinnati Insurance Co. v. Eastern Atlantic Insurance Co.*, 260 F.3d 742, 747 (7th Cir. 2001). Moreover, although Donohoo is entitled to some leeway as a *pro se* litigant, he has demonstrated throughout this case that he is a capable litigator. He ably deposed several of the defendants, filed coherent responses to defendants' proposed findings of fact, and submitted numerous documents and other evidence. Donohoo also appears to have had the advice and assistance of his father, who is an attorney, throughout this litigation.

In light of all this, the most reasonable explanation for Donohoo's failure to respond to defendants' legal arguments is that he could find no legal authority that would support any counter-arguments. Indeed, although defendants' motion for summary judgment could

9

be granted based solely on Donohoo's failure to respond to any of defendants' legal arguments, the court will briefly address the merits of his constitutional claims if for no other reason than to attempt to demonstrate to Donohoo's satisfaction that his claims are foreclosed by well-established law, fully realizing that this may prove a fool's errand.

## II. Takings Claim.

The Takings Clause generally entitles a landowner to just compensation if a state or one of its subdivisions "takes" the owner's land, although a regulation (such as a zoning ordinance) or a land use decision (such as rejection of a building permit) that prevents the owner from deriving *any* economic value from the land is actionable as a taking. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992). Accordingly, Donohoo cannot prove that any decisions by the Douglas County defendants amounted to a taking of his property. Certainly, Donohoo does not claim that the County actually took land from him, and a regulatory taking occurs only where "the challenged government action deprive[s] a landowner of all or substantially all practical uses of the property." *Bettendorf v. St. Croix Cnty.*, 631 F.3d 421, 424 (7th Cir. 2011) (citation omitted). Since the record facts show that Donohoo has maintained a house on his property for years, he has not been deprived of "all or substantially all practical uses of the property."

Even if Donohoo could show that a "taking" had occurred as a result of the denial of his initial permit request or the restrictions placed on the permit, he could not maintain a takings claim. The right protected by the Takings Clause is merely to the market value of what was taken. *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 190 n.11, 194-95 (1985) ("The Fifth Amendment does not proscribe the taking of

10

property; it proscribes the taking of property without just compensation."). This means Donohoo cannot bring a claim that his constitutional right to compensation has been denied until he exhausts his remedies for obtaining a compensation award or equivalent relief from the County. *Id.* ("[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."). Until then, he cannot know whether he has suffered the type of harm for which the Takings Clause affords a remedy. *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 543 (7th Cir. 2008).

Because Donohoo failed to pursue available state remedies, he cannot bring a takings claim in federal court. Donohoo sought judicial review of the decision by the Board of Adjustment, but he failed to appeal the circuit court's decision dismissing his certiorari action. Additionally, Donohoo could have brought a suit for inverse condemnation under Wisconsin statutory law or the state Constitution. *See* Wis. Stat. § 32.10; Wis. Const. art. I, § 13. Accordingly, his takings claim is not ripe and must be dismissed. *See Forseth v. Vill. of Sussex*, 199 F.3d 363, 373 (7th Cir. 2000) (dismissing takings claim for plaintiff's failure to exhaust state court remedies); *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 165 (7th Cir. 1994) ("Litigants who neglect or disdain their state remedies are out of court, period.").

### III. Equal Protection Claim.

Donohoo next claims that the defendants' actions violated his equal protection rights. There are some limited situations in which a property owner may be able to raise a successful equal protection challenge to a local land use decision. *See, e.g., City of Cleburne v.*

*Cleburne Living Center*, 473 U.S. 432, 448–50 (1985) (requirement that group home for persons with disabilities obtain a special permit violated equal protection clause). However, the Seventh Circuit has cautioned plaintiffs that they cannot dodge the exhaustion requirement of *Williamson County* by recasting a takings claim as a claim under the Equal Protection Clause. *Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 423 (7th Cir. 2010) ("Any equal protection claim based on a taking would be unripe and subject to all of the objections that we have just reviewed in connection with the takings claim."); *Patel v. City of Chicago*, 383 F.3d 569, 573–74 (7th Cir. 2004) ("The Plaintiffs insist that [the *Williamson County* ripeness requirements] do not [apply] because theirs is an equal protection claim, not a takings claim. . . . [but] we conclude that the Plaintiffs' have merely re-labeled their takings claim as an equal protection claim, presumably to avoid *Williamson County*'s ripeness requirement."); *River Park*, 23 F.3d at 167 ("Labels do not matter. A person contending that state or local regulation of the use of land has gone overboard must repair to state court.").

Here, Donohoo's equal protection claim is essentially based on the same facts as his takings claim: he contends that defendants' improper denial of his land use permit deprived him of the use and enjoyment of his property and caused him to incur monetary damage. To the extent his equal protection claim is actually a takings claim, the claim is, therefore, barred for his failure to seek relief in state court.

Even assuming Donohoo *meant* to plead an equal protection claim that is factually distinct from a takings theory, his claim fails on the merits. His equal protection claim is not based on an allegation that defendants discriminated against him because of his race, religion or any other protected characteristic. Rather, Donohoo seems to be alleging a

"class-of-one" equal protection claim, based on his allegations that defendants rejected his permit and later imposed unreasonable or unlawful mitigation requirements simply because they did not like him or his construction proposal.  However, "unless the plaintiff is able to show that there was no rational basis for the officials' actions," a land-use decision does not support a class-of-one claim.  *Miller*, 784 F.3d at 1120 (citation omitted).  *See also Patel*, 383 F.3d at 573 ("Absent a fundamental right or a suspect class, to demonstrate a viable equal protection claim in the land-use context, the plaintiff must demonstrate 'governmental action wholly impossible to relate to legitimate governmental objectives.'") (citation omitted).  "Normally, a class-of-one plaintiff will show an absence of rational basis by identifying some comparator -- that is, some similarly situated person who was treated differently."  *Miller*, 784 F.3d at 1120 (citation omitted).  To be similarly situated, a comparator must be "'identical or directly comparable'" to the plaintiff "'in all material respects.'" *Id.* (citation omitted).

Here, Donohoo has identified no suitable comparator.  He asserts vaguely in his brief that the County failed to "furnish on a timely basis a land use permit to [him] despite furnishing similar land use permits to others," but he does not expand upon this argument by identifying who those "others" are.  Nor does he point to any specific facts about the approval of permits for these "others."  Plt.s' Br., dkt. #54, at 2.[7]

---

[7] Donohoo might be referring to two land use permits issued by the County in 2013 and 2014 for construction to homes located on Lake of the Woods.  He submitted with his summary judgment materials copies of two permits:  (1) a June 11, 2013 permit issued to "Ruth Erdmann-Sluka" granting permission to construct a basement under her existing home, (dkt. #57); and (2) an October 16, 2014 permit issued to Michael J. and Darla Higgins, granting permission to construct a second-story on their home, (dkt. #58).  But Donohoo does not explain why these permit-seekers should be considered to be "similarly-situated" to him.  On the contrary, even on the face of these permits, these landowners obviously received land use permits *after* the County had already amended its shoreland zoning ordinances in December of

In fairness, the lack of a comparator does not necessarily doom Donohoo's claim. *See Thayer v. Chiczewski*, 705 F.3d 237, 254 (7th Cir. 2012); *Del Marcelle v. Brown County Corp.*, 680 F.3d 887, 913 (7th Cir. 2012). A plaintiff need not identify a similarly situated person to prove a class-of-one claim if the plaintiff can "exclude rational explanations for why local officials targeted them." *Miller*, 784 F.3d at 1120 (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 748 n. 3 (7th Cir. 2012); *Swanson v. City of Chetek*, 719 F.3d 780, 785 (7th Cir. 2013)).

For example, in *Geinosky*, the plaintiff was allowed to proceed on a class-of-one claim against officers from a single police unit who issued 24 bogus tickets to him in the course of 14 months. *Geinosky*, 675 F.3d at 745-48. The Seventh Circuit reasoned that the "extraordinary pattern of baseless tickets" amounted to a plausible class-of-one claim, particularly since "[r]eason and common sense provide no answer to why he was targeted that could be considered a legitimate exercise of police discretion." *Id.* at 748.

Similarly, in *Swanson*, the Seventh Circuit reversed the grant of summary judgment against plaintiffs whose neighbor, the local mayor, apparently engaged in prolonged harassment against them after they tried to build a fence between their property and his. *Swanson*, 719 F.3d at 784-85. The mayor's actions -- which included entering the plaintiffs' home without permission, abusing his position to delay issuance of a fence permit, shouting at them during a meeting about the permit, telling the plaintiffs' contractors that they were drug dealers and unlikely to pay, and causing the initiation of baseless prosecution in

---

2012 and *after* Rannenberg told Donohoo that his own permit application would be approved, subject to an acceptable mitigation plan. And even if these permit holders were similarly situated to Donohoo, he has not explained why he believes they were treated more favorably than he was. Indeed, their permits show that they, like Donohoo, were required to submit mitigation plans.

municipal court -- appeared "illegitimate on their face" and "demonstrate[d] overt hostility." *Id.* at 782, 785.

Obviously, Donohoo's situation is readily distinguishable from the outrageous conduct considered in *Geinosky* and *Swanson*. The undisputed facts of record reveal a rational basis for Rannenberg's and the Board's denial of Donohoo's initial permit request. At the time Donohoo filed his initial permit application, the law regarding shoreland zoning was in flux. After contacting WDNR officials for guidance, Rannenberg had reason to believe that certain Douglas County shoreland zoning ordinances continued to apply and the Board in turn had reason to accept his explanation. Moreover, the day after the County ordinances were amended, Rannenberg contacted Donohoo regarding his permit application. Whether or not Rannenberg and the Board interpreted the law correctly, their decisions to deny his permit were not irrational and do not permit any inference of vindictiveness or hostility toward Donohoo. Nor has Donohoo shown that any other actions by Rannenberg or the Board were irrational. *Cf. Indiana Land Co., LLC v. City of Greenwood*, 378 F.3d 705, 712 (7th Cir. 2004) (no inference of vindictiveness when council member "dredg[ed] up what may have been the largely forgotten or ignored two-thirds ordinance" that resulted in denial of the plaintiff's permit request). Accordingly, Donohoo has not shown that defendants violated his right to equal protection.

**III.    Due Process Claim.**

This leaves Donohoo's due process claim. All too often due process is invoked because a party feels wronged, rather than because they have been denied due process. This is just such a claim.

The Due Process Clause prohibits the government from depriving any person of his or her property "without due process of law." This phrase has been interpreted to mean both that persons are entitled to process before their property is taken (procedural due process) and that they are free from arbitrary and capricious governmental actions (substantive due process). *Bettendorf*, 631 F.3d at 426; *Hudson v. Palmer*, 468 U.S. 517, 539 (1984).

The nature of Donohoo's due process claim is not entirely clear from either his complaint or the materials he filed in opposition to defendants' motion for summary judgment. If his due process claim is based on a takings theory -- i.e., that the County's land use restrictions or permit decisions deprived him of use and enjoyment of his property -- it must be dismissed for his failure to seek recourse in state court. *See CEnergy-Glenmore*, 769 F.3d at 489 ("[R]egardless of how a plaintiff labels an objectionable land-use decision (i.e., as a taking or as a deprivation without substantive or procedural due process), recourse must be made to state rather than federal court."); *Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 961–62 (7th Cir. 2004) (when a plaintiff's claim of violation of due process asks a federal court to review the same conduct that resulted in an alleged taking, the "exhaustion requirement applies with full force").

To the extent Donohoo is raising a due process claim distinct from a takings theory, he would first have to show that he was deprived of a "protectable property interest." *Muscarello*, 610 F.3d at 423. Assuming, without deciding, that Donohoo's requested use permit constituted a property interest that implicated due process, the next question is whether Donohoo has shown that he was deprived of that interest without the due process required by the Constitution.

With respect to procedural due process, "the process due in a zoning case is minimal and normally must be pursued in state courts." *Id.* *See also River Park*, 23 F.3d at 167 ("scant process is all that is 'due' in zoning cases"). For example, there is "no obligation to provide hearings" in a zoning case. *River Park*, 23 F.3d at 167. "[S]o far as the Constitution is concerned, state and local governments are not required to respect property owners' rights. . . . State and local governments may regulate and even take property," so long as they provide just compensation for taken property. *Id.* Thus, so long as there are adequate local or state means for obtaining review of a zoning decision, procedural due process is satisfied. *Id.*

Here, Donohoo received an abundance of process beyond what he was "due," beginning with a hearing before the Board of Adjustment. He also exercised his right to certiorari review in state court. Moreover, he could have appealed the state court decision dismissing the certiorari action and chose not to do so. After he received his permit in May of 2013, he also could have filed a state certiorari action or an inverse condemnation action challenging the conditions of his permit, but again chose not to. Additionally, if Donohoo believed that the Board or the defendants failed to follow any local or state rules, or failed to properly respond to the state certiorari action, Donohoo's recourse was to seek relief in state court. *Id.* ("the only procedural rules at stake [in zoning cases] are those local law provides, and these rules must be vindicated in local courts"). In sum, the numerous means by which Donohoo could have sought, and did seek, review of defendants' actions more than satisfy the constitutional requirements of procedural due process.

To prevail on a claim that defendants deprived him of substantive due process, Donohoo's burden is even greater, requiring a showing that defendants' actions were

17

"arbitrary and capricious," "random and irrational" and "shocked the conscience." *CEnergy-Glenmore*, 769 F.3d at 488. Additionally, this circuit has emphasized that in order to state a substantive due process claim, a plaintiff must also allege that some other substantive constitutional right has been violated or that state remedies are inadequate. *Id.* at 489. Although a local land-use decision could "theoretically" violate this high standard, neither the Supreme Court nor the Seventh Circuit have ever "definitively concluded that any land-use decision actually amounted to a deprivation of property without substantive due process." *Id.* at 488.

Obviously, Donohoo does not come close to meeting this high standard. Donohoo has not identified any substantive constitutional right that defendants violated. The focus of his claim actually seems to be that defendants failed to apply the new state law, Act 170, despite knowing that it trumped local shoreland zoning ordinances. Plt.s' Br., dkt. #54, at 2. Even assuming that Rannenberg and the Board violated state law by rejecting his initial permit request, however, "an error of state law is not a violation of due process." *Indiana Land Co., LLC v. City of Greenwood*, 378 F.3d 705, 711 (7th Cir. 2004). Nor would a failure to apply this new state law implicate any other substantive constitutional right.

Donohoo also does not allege that state law remedies are inadequate. Moreover, such an allegation would be groundless. In this very case, Donohoo pursued a certiorari action. He subsequently obtained a land use permit. Although the state court rejected Donohoo's request for fees, Donohoo did not avail himself of his right to appeal. He also did not challenge the terms of the permit he received in state court. Under these circumstances, Donohoo could not establish that the state remedial scheme was inadequate.

*CEnergy-Glenmore*, 769 F.3d at 489 (affirming dismissal of due process claim where plaintiff "had options under state law for obtaining the building permits that it did not use").

Finally, Donohoo identifies no actions by Rannenberg or the Board that would constitute "arbitrary and capricious" or "random and irrational" decisions. Their decisions were made in the context of confusion regarding a newly enacted state law and after consultation with WDNR officials. Within a few months, the County amended its shoreland zoning ordinances and took the initiative to contact Donohoo personally about his requested permit. No reasonable jury could conclude that these actions "shocked the conscience." Accordingly, defendants are entitled to summary judgment on Donohoo's due process claim as well.

ORDER

IT IS ORDERED that:

(1) Plaintiff Barry R. Donohoo's Motion for Leave to Amend Complaint, dkt. #61, is DENIED.

(2) The Motion for Summary Judgment, dkt. #27, filed by defendants Doug Hanson, Roger Wilson, Dale Johnson, Larry Luostari, Steven Rannenberg, Carolyn Pierce and Susan T. Sandvick is GRANTED.

(3) The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 3rd day of September, 2015.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge